Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 24, 2003      Decided August 8, 2003

No. 01-1216

AMERICAN CHEMISTRY COUNCIL,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

———

On Petition for Review of a Final Rule of the
Environmental Protection Agency

———

*Michael W. Steinberg* argued the cause for petitioner. With him on the briefs were *David F. Zoll* and *Leslie A. Hulse.*

*Thomas Sayre Llewellyn* argued the cause for *amicus curiae* American Petroleum Institute in support of petitioner. With him on the brief were *G. William Frick* and *Ralph J. Colleli, Jr.*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Jon M. Lipshultz*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief was *Steven E. Silverman*, Attorney, U.S. Environmental Protection Agency. *John C. Cruden*, Assistant Attorney General, U.S. Department of Justice, entered an appearance.

Before: GINSBURG, *Chief Judge*, and SENTELLE and RANDOLPH, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The American Chemistry Council (ACC) petitions for review of a rule promulgated by the Environmental Protection Agency pursuant to the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901–6992(k), treating as a "hazardous waste" any substance that is either mixed with or derived from a listed hazardous waste. The effect is to render such mixtures and derivatives subject to the stringent standards for the management of hazardous waste. We reject the ACC's argument that the EPA lacked authority for the rule under the RCRA and hence we deny the petition for review.

## I. Background

The RCRA "is a comprehensive environmental statute that empowers EPA to regulate hazardous wastes from cradle to grave, in accordance with . . . rigorous safeguards and waste management procedures." *Chicago v. Environmental Defense Fund*, 511 U.S. 328, 331 (1994); *see Environmental Defense Fund v. EPA*, 210 F.3d 396, 397–98 (D.C. Cir. 2000); *United Technologies Corp. v. EPA*, 821 F.2d 714, 716 (D.C. Cir. 1987). The Act requires the EPA to regulate the identification, disposal, and treatment of "hazardous waste," which is defined as:

> a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may –
>
>> (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5). "Solid waste" is in turn defined (in part) as any "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial [or] commercial ... operations." *Id.* § 6903(27).

The Act requires the Administrator to:

develop and promulgate criteria for identifying the characteristics of hazardous waste, and for listing hazardous waste ... taking into account toxicity, persistence, and degradability in nature, potential for accumulation in tissue, and other related factors such as flammability, corrosiveness, and other hazardous characteristics....

42 U.S.C. § 6921(a). The Administrator must "promulgate regulations identifying the characteristics of hazardous waste, and listing particular hazardous wastes (within the meaning of section 6903(5) of this title), which shall be subject to the provisions of this subchapter." *Id.* § 6921(b)(1). Pursuant to § 6921, the EPA may deem wastes hazardous

in one of two ways: They possess one of the four hazardous characteristics identified by the EPA in 40 C.F.R. Part 261, Subpart C ("characteristic wastes"), *see id.* § 261.3(a)(2)(i) (1991), or have been found to be hazardous as a result of an EPA rulemaking. *See id.* Part 261, Subpart D ("listed wastes").

*Chemical Waste Management, Inc. v. EPA*, 976 F.2d 2, 7–8 (D.C. Cir. 1992).

Both characteristic hazardous wastes and listed hazardous wastes are subject to regulation under Subtitle C of the RCRA, which applies stringent management standards to the generation, transportation, treatment, storage, and disposal of hazardous waste. *See* 42 U.S.C. §§ 6921–6925. Under the "delisting process" provided in the Act, a listed hazardous waste will be deemed non-hazardous at a particular facility if a petitioner demonstrates that the waste no longer meets any

of the criteria for which it was listed, and that it is not hazardous because of any other factor reasonably identified by the EPA. 42 U.S.C. § 6921(f), 40 C.F.R. § 260.22.

In the proceeding here under review, the EPA modified the regulatory definition of "hazardous waste" to include, subject to certain exceptions, "a mixture of solid waste and one or more hazardous wastes," 40 C.F.R. § 261.3(a)(2)(iv), and "any solid waste generated from the treatment, storage, or disposal of a hazardous waste, including any sludge, spill residue, ash emission control dust, or leachate." 40 C.F.R. § 261.3(c)(2)(i). The EPA's new definition went into effect on an interim basis in 1992.* 57 Fed. Reg. 7628 (Mar. 3). In 1999 the EPA proposed in substance to make permanent the 1992 rule, with some minor alterations not relevant to this case. 64 Fed. Reg. 63,382 (Nov. 19). The EPA issued the Final Rule so doing on May 16, 2001. 66 Fed. Reg. 27,266.

## II. Analysis

We review the Agency's interpretation of a statute it is charged with administering under the two-step analysis of *Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984). First we must determine "whether Congress has directly spoken to the precise question at issue," *id.* at 842 – here, whether, as the ACC argues, the statutory definition of "hazardous waste" excludes substances mixed with or derived from such waste. If the Congress has so spoken, then "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue," then we must go on to

_____

* The ACC also challenges the 1992 interim rule. The EPA suggests this challenge is untimely and moot, and the ACC lacks standing. We conclude that we have jurisdiction, *see Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 921 (D.C. Cir. 1998) ("Once an agency reopens an issue . . . a new review period is triggered"), and we deny the petition for review of the 1992 rule for the same reasons we deny the challenge to the Final Rule.

determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

A. *Chevron* step one

The ACC argues first that the EPA's interpretation is inconsistent with the statutory definition of hazardous waste, 42 U.S.C. § 6903(5), because the rule brings within that definition substances that do not exhibit a harmful "characteristic." The ACC points to the "EPA['s] acknowledge[ment] that not all mixtures and derivatives pose hazards to human health and the environment." Final Rule, 66 Fed. Reg. at 27,276. According to the ACC, the Congress could not possibly have meant to include in the definition of hazardous waste solid wastes that do not pose a threat to human health or the environment. *See Natural Resources Defense Council, Inc. v. United States EPA*, 907 F.2d 1146, 1159 (D.C. Cir. 1990) ("A hazardous waste . . . is such only if various factors, including the *concentration* of hazardous constituents, actually make it hazardous to human health or the environment") (internal citation omitted).

In our view, however, the Congress did not speak directly, let alone clearly, to this issue. As the EPA points out, the definition of "hazardous waste" in the statute has a broad sweep. *See Environmental Defense Fund*, 210 F.3d at 397. It includes not only those solid wastes that do pose hazards to human health or the environment, but also those that "may" do so. In addition, the definition includes those wastes in which the "potential hazard" becomes an actual hazard only if the waste is "improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C. § 6903(5)(B). This provision does not make mixtures and derivatives clearly hazardous wastes or clearly non-hazardous wastes. The element of judgment imported into the definition of hazardous waste by the use of "may" and the inclusion of waste that may be hazardous only if mismanaged necessarily makes the statute ambiguous on this score.

The ACC argues nonetheless that the Final Rule simply cannot be squared with the Act because it allows the EPA to classify a substance as hazardous without "taking into account

toxicity, persistence, and degradability in nature, potential for accumulation in tissue, and other related factors," as required by § 6921(a). Amicus American Petroleum Institute adds that the legislative history of § 6921 indicates the EPA must follow a two-step process in order to regulate a solid waste as hazardous: it must first determine the characteristics of a hazardous waste and then show that a particular solid waste has at least one such characteristic. *See* H.R. Rep. No. 1491, 94th Cong., 2d Sess. 25, *reprinted in* 1976 U.S.C.C.A.N. 6238, 6263 ("Only after the criteria for determining what is hazardous has [sic] been developed can the Administrator determine which specific wastes are hazardous").

According to the EPA, however, when it lists a waste as hazardous it could, in principle, automatically list its mixtures and derivatives as well. That is, the mixture rule and the derived-from rule are consistent with § 6921 because mixtures and derivatives are "a second generation of the listed hazardous wastes from which they originate, [and] it is reasonable to presume, until demonstrated otherwise, that these wastes are also hazardous."

We think the EPA's response is sufficient, at the least, to demonstrate that the statute does not directly answer the issue before us. For the reason just quoted, § 6921 cannot be understood to preclude the EPA from regulating mixtures and derivatives until such time as they may be shown to be non-hazardous. Some – perhaps most – mixtures and derivatives maintain the characteristics of their parent hazardous waste. *See* Final Rule, 66 Fed. Reg. at 27,274–75 (citing Mark Eads, Office of Solid Waste, EPA, *Analysis of RCRA "Mixtures and Derived-From" Hazardous Waste Constituent Data*, which analyzed the EPA's National Hazardous Waste Constituent Survey Database); *Chemical Waste Management, Inc. v. EPA*, 869 F.2d 1526, 1539 (D.C. Cir. 1989) ("a hazardous waste does not lose its hazardous character simply because it changes form or is combined with other substances"). Any mixture or derivative that does not remain hazardous may be exonerated either by an explicit exclusion in the initial listing or through the delisting process of § 6921(f).

In sum, neither the definition of "hazardous waste" nor § 6921 answers the question whether that definition or any other provision of the RCRA authorizes the EPA to regulate a mixture or derivative that may be, but has not yet been shown to be, a hazardous waste. We must go on to determine, therefore, whether the EPA's interpretation of 42 U.S.C. § 6903(5) is reasonable.

### B. *Chevron* step two

The EPA persuasively argues that it reasonably interpreted the term "hazardous waste" presumptively to include mixtures and derivatives: "[The Final Rule] assure[s] that hazardous mixtures and derivatives do not imprudently escape Subtitle C requirements." We agree. The Final Rule fulfills the purpose for which the Congress passed the RCRA, namely to subject hazardous waste to "cradle-to-grave" regulation in order to protect public health and the environment. *United Technologies*, 821 F.2d at 716. To that end, too, the Congress "requir[ed] that hazardous waste be properly managed in the first instance thereby reducing the need for corrective action at a future date." 42 U.S.C. § 6902(a)(5). We also agree that, because many mixtures of and derivatives from hazardous wastes are themselves hazardous, it is reasonable for the EPA to assume that all such mixtures and derivatives are hazardous until shown otherwise. For that reason we have already endorsed a similar action by the EPA with respect to hazardous wastes that mix with soil and groundwater. *See Chemical Waste Management*, 869 F.2d at 1540. Placing the burden upon the regulated entity to show the lack of a hazardous characteristic in a mixture or derivative it manages avoids placing upon the EPA what the agency persuasively describes as "the nearly impossible affirmative burden of anticipating and analyzing, in a listing decision, the hazardousness or non-hazardousness [of] every conceivable mixture or derivative that a generator might create." In addition, the dozen or more exceptions already contained in the rule – such as those for used oil, 40 C.F.R. § 261.3(a)(2)(v), certain laboratory wastewaters, *id.* § 261.3(a)(2)(iv)(E), and certain carbamate wastewaters, *id.*

§ 261.3(a)(2)(iv)(F)-(G) – prevent it from casting too wide a net over nonhazardous mixtures and derivatives.

The ACC objects that the delisting mechanism does not provide any realistic relief to the potential over-inclusiveness of the rule because it is "slow, onerous, ineffective, and at times controversial." OFFICE OF SOLID WASTE AND EMERGENCY RESPONSE, ENVIRONMENTAL PROTECTION AGENCY, THE NATION'S HAZARDOUS WASTE MANAGEMENT PROGRAM AT A CROSSROADS: THE RCRA IMPLEMENTATION STUDY 39 (1990). The cumbersome nature of the delisting process, however, says nothing about the reasonableness of the EPA's interpretation of the statute. And in any event, even if the delisting process were impossibly cumbersome, a party could still head off the initial listing of the mixture or derivative by proposing that the initial listing of a particular waste as hazardous include the qualification that certain specified mixtures and derivatives are not included in the listing.

The ACC claims the EPA has available to it other "lawful and adequate alternatives to the mixture rule and the derived-from rule," such as adopting broader listings or modifying the current prohibition on dilution of hazardous waste. *See* 40 C.F.R. § 268.3. We disagree because the EPA has shown not only that the Final Rule prevents hazardous mixtures and derivatives from evading proper treatment under the RCRA but also that the alternatives proposed by the ACC would not be as effective. For example, using broader listings would place upon the EPA the very administrative burden we deemed above to be impractical; the Agency would have to identify not only the hazardous waste but also to determine whether all second-generation wastes are hazardous. The anti-dilution rule makes unlawful the expedient of simply diluting hazardous waste in order to lower the concentration of hazardous constituents and thereby circumvent regulation under the RCRA. The ACC does not explain how modifying the anti-dilution rule would make it an effective substitute for the Final Rule.

Finally, the ACC argues that the Final Rule imposes a significant cost upon industry without any showing of a

concomitant public benefit. The ACC, however, does not identify any provision of the RCRA requiring the benefits of a regulation to equal or exceed its costs. And the EPA has submitted evidence that some mixtures and derivatives display the hazardous characteristics of their parent waste, *see* Final Rule, 66 Fed. Reg. at 22,274–75, which suggests the rule will provide at least some added protection of the environment and public health.

We think the Congress wanted the EPA, in deciding which substances to regulate as "hazardous" under the RCRA, to err on the side of caution, *see* 42 U.S.C. § 6901(b)(6); the Final Rule is a reasonable exercise of such caution. Therefore, we cannot say the rule is an unreasonable interpretation of the agency's statutory mandate comprehensively to regulate hazardous waste.

### III.   Conclusion

For the foregoing reasons, the petition for review is

*Denied.*