SOLVAY USA INC., Petitioner

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

**Metals Industries Recycling Coalition, et al., Intervenors.**

Nos. 11–1189, 11–1192, 11–1202, 11–1214, 11–1216, 11–1217, 11–1220, 11–1221, 11–1223, 11–1224, 11–1226, 11–1227, 11–1228, 11–1232, 11–1233, 11–1235, 11–1238, 13–1152, 13–1156, 13–1157, 13–1158, 13–1159, 13–1160, 13–1162, 13–1164, 13–1165.

United States Court of Appeals, District of Columbia Circuit.

June 3, 2015.

Before: TATEL and WILKINS, Circuit Judges, and SENTELLE, Senior Circuit Judge.

### JUDGMENT

PER CURIAM.

This case was considered on the record from the United States Environmental Protection Agency and the briefs and arguments of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C.Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the petitions for review be denied for the reasons stated below.

Environmental and industry petitioners challenge aspects of EPA's final action, which provides procedures for classifying non-hazardous secondary materials as "solid waste" for the purpose of regulating Clean Air Act emission standards for incinerators and other combustion units. *Identification of Non–Hazardous Secondary Materials That Are Solid Waste,* 76 Fed. Reg. 15,456 (Mar. 21, 2011), as amended by *Commercial and Industrial Solid*

*Waste Incineration Units: Reconsideration and Final Amendments; Non–Hazardous Secondary Materials That Are Solid Waste,* Final Rule, 78 Fed.Reg. 9,112 (Feb. 7, 2013) (collectively "the rule"), codified at 40 C.F.R. pt. 241. Whether a secondary material is solid waste determines whether EPA regulates a facility burning the material under 42 U.S.C. § 7429 or § 7412, and "EPA's decision to regulate a source under one section rather than the other has practical consequences." *Nat'l Ass'n of Clean Water Agencies v. EPA,* 734 F.3d 1115, 1119–20 (D.C.Cir.2013).

To regulate emission standards under the Clean Air Act, Congress directed EPA to define the term "solid waste" pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq. See* 42 U.S.C. § 7429(g)(6). RCRA defines "solid waste" as

any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and *other discarded material,* including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges . . . .

42 U.S.C. § 6903(27) (emphasis added). Petitioners challenge how the rule classifies some non-hazardous secondary materials as discarded and other materials as not discarded.

By default, the rule classifies secondary material as solid waste unless otherwise excluded. *See* 40 C.F.R. § 241.3(a). At issue here, the rule creates general exclusions for: (1) material "within the control of the generator" that is combusted on

site; (2) material "used as an ingredient in a combustion unit;" and (3) discarded material that is "processed to produce a nonwaste fuel or ingredient." *Id.* § 241.3(b). To qualify for these general exclusions, the material must satisfy "legitimacy criteria" specified in the rule. *Id.* These criteria consider the manner in which the material is managed, the heating value of the material, and the level of contamination in the material. *See* 40 C.F.R. § 241.3(d). In addition to the general exclusions, the definition of solid waste categorically excludes scrap tires managed under a tire collection program, resinated wood, processed coal refuse, and dewatered pulp and paper sludge that is burned on site. *See id.* § 241.4(a).

We review EPA's interpretation of RCRA and the Clean Air Act under the familiar framework of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Ethyl Corp. v. EPA*, 51 F.3d 1053, 1058 (D.C.Cir.1995). We review EPA's final rule under the arbitrary and capricious standard of the Administrative Procedure Act, and we must set aside any action "in excess of [EPA's] statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(A), (C). Under the arbitrary and capricious standard of review, the agency must " 'set forth its reasons' for decision," *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C.Cir. 2001) (quoting *Roelofs v. Sec'y of the Air Force*, 628 F.2d 594, 599 (D.C.Cir.1980)), and " 'respond meaningfully' to objections raised by a party," *PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C.Cir.2005) (quoting *Canadian Ass'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299 (D.C.Cir.2001)). We afford great deference to EPA's determinations based on technical matters within its area of expertise. *See West Virginia v. EPA*, 362 F.3d 861, 867–68 (D.C.Cir.2004).

Environmental petitioners contend that the rule is an end-run around the statutory scheme, and they ask us to vacate EPA's definition of solid waste and remand for the agency to promulgate a new definition consistent with the Clean Air Act and RCRA. In their view, EPA's definition of solid waste impermissibly excludes materials that have been "discarded" within the ordinary meaning of that term—*i.e.*, "disposed of, abandoned, or thrown away." *Ass'n of Battery Recyclers, Inc. ("ABR") v. EPA*, 208 F.3d 1047, 1052 (D.C.Cir. 2000). We reject environmental petitioners' arguments because neither statute (the Clean Air Act or RCRA) nor this Court's precedents prevent EPA from defining solid waste to exclude certain nonhazardous secondary materials combusted for energy or used as an ingredient for fuel.

In the context of RCRA, we previously recognized that the term "discarded" is "marked by the kind of ambiguity demanding resolution by the agency's delegated lawmaking powers." *Am. Mining Congress ("AMC II") v. EPA*, 907 F.2d 1179, 1186 (D.C.Cir.1990) (citing *Am. Petroleum Inst. v. EPA*, 906 F.2d 729, 740–41 (D.C.Cir.1990)); *see also ABR*, 208 F.3d at 1056 (explaining that the term discarded "may be ambiguous as applied to some situations, but not as applied to others"). Thus, EPA's characterization of some types of non-hazardous secondary material "as discarded . . . is entitled to deference" under *Chevron*. *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 57 (D.C.Cir.2000) (citing *AMC II*, 907 F.2d at 1186).

The record reflects "that EPA engaged in reasoned decisionmaking to decide which characterization is appropriate" for different types of non-hazardous materials. *Id.* The exceptions constitute a reasonable interpretation of ambiguous language and

strike an appropriate balance between RCRA's dual goals of "recovery and conservation." 42 U.S.C. § 6901(c)(3). Because EPA " 'has considered the relevant factors and articulated a rational connection between the facts found and the choice made,' " we uphold the rule. *Nat'l Ass'n of Clean Air Agencies v. EPA,* 489 F.3d 1221, 1228 (D.C.Cir.2007) (quoting *Allied Local & Reg'l Mfrs. Caucus v. EPA,* 215 F.3d 61, 68 (D.C.Cir.2000)).

EPA also reasonably exercised its discretion when it developed legitimacy criteria to distinguish non-hazardous secondary materials used as fuel or ingredients from those that are solid waste. *See* 40 C.F.R. § 241.3(d). Environmental petitioners' challenge to EPA's legitimacy criteria lacks merit because it is "eminently reasonable to treat materials that are indistinguishable" from virgin materials as non-waste fuel. *Safe Food & Fertilizer v. EPA,* 350 F.3d 1263, 1269 (D.C.Cir.2003). Accordingly, we deny environmental petitioners' petition for review.

Industry petitioners ask us to vacate EPA's classification of sewage sludge and suggest that EPA does not have jurisdiction over firm-to-firm transfers of alternative fuels that are not discarded. We deny their petition because their argument regarding sewage sludge is foreclosed by RCRA's plain language, and EPA's distinction between material burned by the generator and material transferred to a third party is consistent with RCRA and reasonable.

RCRA defines solid waste as including "sludge from a waste treatment plant" while excluding "solid or dissolved material in domestic sewage." 42 U.S.C. § 6903(27). It defines "sludge" as "waste generated from a municipal, commercial, or industrial wastewater treatment plant." *Id.* § 6903(26A). Although sludge is generated from the treatment of domestic sewage, sludge is plainly not the same as "solid or dissolved material in domestic sewage" under § 6903(27). We reject industry petitioners' reading of the statute because it would render the definition of sludge meaningless.

Industry petitioners suggest that "EPA's upside down view" of material transferred firm-to-firm "is contrary to the law regarding EPA's limited jurisdiction." Industry Br. 12. We disagree. In deciding which materials to regulate under RCRA, Congress wanted EPA "to err on the side of caution." *Am. Chemistry Council v. EPA,* 337 F.3d 1060, 1066 (D.C.Cir.2003). Thus, EPA may place "the burden upon the regulated entity to show" that its material should not be regulated; otherwise, EPA would be burdened with the "nearly impossible" task of anticipating and analyzing every conceivable situation that might arise. *Id.* at 1065. EPA is well within its statutory authority to assume that transferred material is solid waste until an interested party demonstrates that the material "has not been discarded and is indistinguishable in all relevant aspects from a fuel product." 40 C.F.R. § 241.3(c)(1). We therefore deny industry petitioners' petition for review.

Pursuant to Rule 36 of this Court, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing *en banc. See* Fed R.App. P. 41(b); D.C.Cir. R. 41.